MEMORANDUM OPINION


No. 04-04-00579-CV

PADGETT’S USED CARS AND LSNG., INC.,
Appellant

v.

Rosemary PRESTON, 
Appellee

From the County Court at Law No. 10, Bexar County, Texas
Trial Court No. 282012
Honorable Irene Rios, Judge Presiding
 
Opinion by:    Rebecca Simmons, Justice
 
Sitting:            Catherine Stone, Justice
                        Sarah B. Duncan, Justice
                        Rebecca Simmons, Justice
 
Delivered and Filed:   September 21, 2005

AFFIRMED

            In this appeal, we must determine whether Appellant’s affirmative misrepresentations
overcome the lack of causation associated with an “as is” clause, whether the damages were
supported by the evidence or limited by the offer of settlement, and whether attorney’s fees were
capped in accordance with the settlement offer. See Tex. Bus. & Com. Code Ann. § 17.5052
(Vernon 2002). We hold that an “as is” clause must be reviewed by evaluating the nature of the
transaction and the totality of the circumstances surrounding the agreement. Additionally, there is
more than a scintilla of evidence to support the award of damages. The settlement offer was
conditional and therefore, damages are not capped pursuant to the Texas Deceptive Trade Practices
Act (DTPA). Finally, the amount of attorney’s fees offered was not substantially the same as those
actually incurred as of the date of the settlement offer. We affirm the trial court. 
Background 
            In August 2002, Rosemary Preston, who is disabled, purchased a 1994 Ford Taurus from
Padgett’s Used Cars and Leasing, Inc. The vehicle in question bore an “AS IS - NO WARRANTY”
window sticker. The record reveals Padgett’s made three affirmative representations to induce
Preston to purchase the vehicle: (1) the 56,654 on the odometer represented “actual” miles; (2) the
mileage was low because the vehicle only had one owner —an elderly man who lived in the country
and infrequently drove the vehicle; and (3) the vehicle had never been involved in an accident.
Preston purchased the vehicle, which broke down the next day and required Preston, on at least six
occasions, to expend additional monies for repairs in excess of $1,200.00 during the following year.
            Preston subsequently learned the vehicle’s odometer had rolled over 100,000 miles at least
once and possibly twice, such that the actual miles were 156,654 or 256,654 at the time of Preston’s
purchase. Additionally, the vehicle had at least three previous owners—Wheels, Inc., Ugly Duckling
Car Sales, and Mark A. Collier, none of whom were an elderly man living in the country. Moreover,
the vehicle was originally towed to Padgett’s for a $400.00 trade-in credit, at which time Padgett’s
replaced the fuel pump and sold the vehicle to Preston for over $5,000.00.
            In accordance with the Texas Deceptive Trade Practices Act, Preston sent a notice letter to
Padgett’s, who in turn made an offer of settlement. The offer was rejected, and Preston brought suit
for breach of contract, violations of the DTPA, and negligent misrepresentations, among other
claims. The jury rendered a verdict in Preston’s favor, finding that Padgett’s intentionally engaged
in false, misleading, or deceptive trade practices when it sold Preston the vehicle and that Padgett’s
knew or should have known the falsity and inaccuracy of the information pertaining to the vehicle.
Accordingly, the jury awarded Preston actual damages of $5,919.93 ($3500 for the value of the
vehicle, $1,000.00 for repairs and $1,419.93 in interest damages), punitive damages in the amount
of $10,000.00 and attorney fees for trial in the amount of $40,000.00 and an additional $50,000.00
in the event of an appeal. Preston elected to recover under the DTPA, and the trial court entered
judgment on all damages awarded by the jury.
Standard of Review 
            In reviewing the legal sufficiency of the evidence, we consider the evidence in the light most
favorable to the challenged finding, disregarding all evidence and inferences to the contrary.
Bradford v. Vento, 48 S.W.3d 749, 754 (Tex. 2001). The evidence is legally sufficient if more than
a scintilla of evidence supports the finding. Formosa Plastics Corp. USA v. Presidio Engineers and
Contractors, Inc., 960 S.W.2d 41, 48 (Tex. 1998).
            When analyzing the factual sufficiency of the evidence, we consider and weigh all of the
evidence, both for and against the finding. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). We
reverse the judgment only if such finding is against the great weight and preponderance of the
evidence so as to be clearly wrong and unjust. Id.; see also McLaughlin, Inc. v. Northstar Drilling
Techs., Inc., 138 S.W.3d 24, 27 (Tex. App.—San Antonio 2004, no pet.). When both no evidence
and insufficient evidence points are raised, the appellate court addresses the no evidence point first.
Glover v. Texas Gen. Indem. Co., 619 S.W.2d 400, 401 (Tex. 1981). 
ANALYSIS
A.        The “As Is” Clause
            In Prudential Ins. Co. of America v. Jefferson Assocs., Ltd., 896 S.W.2d 156 (Tex. 1995),
the Supreme Court held that an “as is” agreement negates the causation element essential to recover
under the DTPA theories of fraud, negligence and breach of duty of good faith and fair dealing. Id
at 161. However, the Supreme Court specifically found that fraudulent inducement is an exception
when construing an “as is” agreement. “A buyer is not bound by an agreement to purchase something
‘as is’ that he is induced to make because of a fraudulent representation or concealment of
information by the seller.” Id. at 162. In other words, a seller cannot assure a buyer of a particular
condition of the item to be purchased and then disavow the assurance which procured the “as is”
agreement. Weitzel v. Barnes, 691 S.W.2d 598, 601 (Tex. 1985). This court looks to “[t]he nature
of the transaction and the totality of the circumstances surrounding the agreement.” Prudential, 896
S.W.2d at 162. In doing so, the court considers the sophistication of the parties, whether the
agreement was freely negotiated, and whether there was knowing misrepresentation or concealment
of a known fact. Id. at 160-62. 
            The record supports that Preston purchased the vehicle with the knowledge of the “as is”
condition. The “as is” provision was a pre-printed, boiler plate sticker displayed on the vehicle’s
window. There is no signed contract containing the “as is” provision or a disclaimer of Preston’s
reliance on oral representations made by Padgett’s. See Prudential, 896 S.W.2d at 162. The record
further reveals that Padgett’s either knew or should have known several of the facts blatantly
misrepresented to Preston were false; specifically the low mileage, the previous owner, and whether
the vehicle had been involved in any accidents. Padgett’s knowingly concealed material information
and made affirmative oral misrepresentations to Preston regarding the condition of the vehicle. The
evidence supports the jury’s finding that Preston relied to her detriment on Padgett’s oral
misrepresentations. See Smith v. Levine, 911 S.W.2d 427, 433 (Tex. App.—San Antonio 1995, writ
denied) (holding “as is” clause in a contract for the purchase of a house did not negate element of
causation when there was evidence of affirmative misrepresentations by seller). Because the
evidence is both legally and factually sufficient to support that knowing misrepresentations were
made and relied upon by Preston, the “as is” clause does not preclude Preston’s recovery. We
overrule Appellant’s first issue.


           
B.        Damages and the Settlement Offer
            1.         Sufficiency of the Evidence
          Padgett’s asserts there is no evidence to support the damage award based on double recovery,
the reasonableness of the repairs, and the interest charges. The Texas Deceptive Trade Practices Act
defines economic damages as “compensatory damages for pecuniary loss, including costs of repair
and replacement.” Tex. Bus. & Com. Code Ann. § 17.45(11) (Vernon 2002). In cases involving
misrepresentation, plaintiffs may recover under either the “out of pocket” measure of damages or the
“benefit of the bargain” measure of damages, whichever gives the plaintiff the greater recovery. W.O.
Bankston Nisson, Inc. v. Walters, 754 S.W.2d 127, 128 (Tex. 1988). The “out of pocket” measure
of damages is the difference between the value of what the plaintiff parted with and the value of what
the plaintiff received. Id. The “benefit of the bargain” measure of damages “is the difference between
the value as represented and the value actually received.” Id. These two measures of damages are not
exclusive. Henry S. Miller Co. v. Bynum, 836 S.W.2d 160, 162 (Tex. 1992). Other damages such as
cost of repair are permitted to ensure the plaintiff is made whole. Id. Damages of cost of repair are
recoverable so long as the issues make it clear that another measure of damages does not take into
account the cost of repair. See Ludt v. McCollum, 762 S.W.2d 575, 576 (Tex. 1988).
            Padgett’s misrepresentations induced Preston to purchase a vehicle at a much inflated price.
Diminution in value is defined as the “[r]ule of damages which provides for the difference between
‘before’ and ‘after’ value of property which has been damaged or taken.” Black’s Law Dictionary
412 (5th ed. 1979). Diminution in value, as a measure of damages, requires wrongful conduct
resulting in damage to the claimant’s property. Padgett’s did not damage the vehicle, it simply
misrepresented its value. The record is replete with evidence of Preston’s out of pocket expenses and
void of evidence that the repair costs increased the value of the vehicle. In fact, Preston’s expert
testified that regardless of how much money was spent on repairs, the vehicle was only worth
between $400.00 and $500.00 because the odometer had rolled over requiring it to be sold as “milage
unknown-exceeds mechanical limits.”
            In order to be awarded costs of repair, a claimant must not only prove the repairs were
necessary, but also that they are reasonable. Jordan Ford, Inc. v. Ashbury, 625 S.W.2d 1, 3 (Tex.
Civ. App.–San Antonio 1981, no writ). The record reveals more than a scintilla of evidence that the
repair charges were reasonable and necessary. Formosa Plastics, 960 S.W.2d at 49. Taking the
evidence in the light most favorable to Preston, Padgett’s points to no evidence that the repairs were
unreasonable or increased the value of the vehicle. To the contrary, Preston testified to a plethora of
repairs necessary simply to allow the vehicle to be driven,


 including repairs actually performed by
Padgett’s. A claimant need only present sufficient evidence to justify a jury’s finding that the costs
were reasonable and the repairs necessary. Ron Craft Chevrolet, Inc. v. Davis, 836 S.W.2d 672, 677
(Tex. App.–El Paso 1992, writ denied) (considering the fact that Chevrolet had performed some of
the vehicle repairs in determining reasonableness).
            The jury’s interest award equals the actual charges incurred by Preston as evidenced by the
Federal Disclosure Statement of the APR and Finance Charge contained in Preston’s vehicle loan
documents from Washington Mutual. This is direct evidence of the reasonableness and necessity
reflected in the jury’s award. Preston incurred these charges as a result of the purchase based upon
misrepresentations made by Padgett’s. Consequently, we hold there is sufficient evidence to support
the damages awarded by the jury.
            2.         Offer of Settlement
            Padgett’s alleges that because a nonconditional offer of settlement was made to Preston, prior
to trial and in accordance with the provisions of the Texas Deceptive Trade Practices Act, the
damages must be capped. On March 24, 2003, Padgett’s sent the following offer of settlement:
I have considered your rejection of my offer settlement described in
my letter of March 20, 2003. I still need the receipts for the
$1,259.06 worth of repairs which Ms. Preston made to the vehicle.
Considering they were need [sic] and necessary and have added
to the value of the vehicle we make the following offer: In
exchange for the vehicle and a full and complete release, we will pay
off the balance of $4,182.26 to the holder of the lien. We will refund
to Ms. Preston the $500.00 she paid as a down-payment plus $500.00
for a total of $1,000.00 to Ms. Preston directly. We will pay $700 in
attorney’s fees. (Emphasis added) 

            “In order to determine whether a condition precedent exists, the intention of the parties must
be ascertained and that can only be done by looking at the entire contract.” Hudson v. Wakefield, 645
S.W.2d 427, 430 (Tex. 1983). This court will look to what the words plainly state. Gallop v. St. Paul
Ins. Co., 515 S.W.2d 249, 251 (Tex. 1974). Generally terms such as “if”, “provided that”, “on
condition that” or similar phrases are necessary for determining if an offer is conditional. Criswell
v. European Crossroads Shopping Center, Ltd., 792 S.W.2d 945, 948 (Tex. 1990). Although the
letter in question does not specifically use any of these phrases, the gist of the letter requires Preston
to provide evidence of the repairs and that said repairs were necessary and have added to the value
of the vehicle. The phrase in question uses words of ordinary meaning. They are words with popular
and usual meaning to the public, and that is the meaning that should be attributed to them. Gallup,
515 S.W.2d at 251. Padgett’s challenge of the repairs as reasonable and necessary is evident by the
language used in the correspondence. The ability to show the repairs added to the value of the
vehicle was impossible according to Preston’s expert. We find the letter was a conditional settlement
offer, therefore not falling within the provision of the Texas Deceptive Trade Practices Act §
17.5052(g), and overrule Appellant’s second issue.
C.        Attorney’s Fees
            In its third issue, Padgett’s asserts the attorney’s fees offered in the previously described letter
of March 24, 2003, were substantially the same as the reasonable and necessary attorney’s fees
incurred by Preston as of the date of the rejected offer, thereby limiting the attorney’s fee award to
$700.00. In that we previously affirmed the jury’s finding that Padgett’s violated the DTPA, the next
determination is the reasonable value of attorney’s fees to be awarded.
            Padgett’s asserts the attorney’s fees offered in the settlement offer were substantially the
same as the reasonable and necessary fees incurred up to that point. There was contradicting
evidence presented as to whether the $700.00 offered by Padgett’s was reasonable. Importantly, the
limitation is for consumers unreasonably refusing to settle and provides for attorney’s fees
“reasonably incurred by the consumer in asserting the claim against the defendant.” Tex. Bus. &
Com. Code Ann. § 17.505 (Vernon 2002). Not only was Preston not a consumer unreasonably
refusing to settle under the DTPA, but the offer made by Padgett’s was not substantially the same
as, or more than, the fees incurred by Preston on that date. Tex. Bus. & Com. Code Ann.
§17.5052(h) (Vernon 2002) (stating that in order to limit damages to the lesser of the settlement offer
or the amount found by the trier of fact “the amount tendered in the settlement offer for damages”
must be the same, substantially the same, or more than damages determined by the trier of fact). 
Padgett’s offer included $700.00 in attorney’s fees. Preston’s attorney testified he had invested 15.3
hours at a rate of $125.00 per hour, prior to the offer of settlement. This evidence alone substantiates
that Padgett’s offer of $700.00 is not the same as, or substantially the same as, the attorney’s fees
amounting, at that point, to $1,912.50. Once again, Padgett’s offer of settlement does not comply
with requirements of Section 17.505(c), because the offer did not include an agreement to reimburse
Preston for her reasonable attorney’s fees. Cain v. Pruett, 938 S.W.2d 152, 157 (Tex. App.—Dallas
1996, no writ). 
            Alternatively, Padgett’s claims the attorney’s fees are unreasonable because they are
disproportionate to the amount of recovery. Many factors are considered in determining the
reasonableness of attorney’s fees including the time spent on the case, the nature and complexity of
the case, the experience of the attorney, and the usual and customary hourly rate in the locality.
Ragsdale v. Progressive Voters’ League, 801 S.W.2d 880, 881 (Tex. 1990); see also Tex.
Disciplinary R. Prof’l Conduct 1.04(b) reprinted in Tex. Gov’t Code Ann., tit. 2, subtit. G app.
A (Vernon 2005) (Tex. State Bar R., art. X § 9). In accordance with the jury’s findings, Padgett’s
actions caused the damages in question. As a result of this suit, Preston incurred attorney’s fees prior
to trial and during trial at a rate of $125.00 per hour.
            While it is true that an attorney’s fee should bear some reasonable proportion to the amount
of money involved in the litigation, the reasonableness of an attorney’s fee is not wholly dependent
upon the amount of recovery. Magids v. Dorman, 430 S.W.2d 910, 912 (Tex. Civ. App.—Houston
[14th Dist.] 1968, writ ref’d n.r.e.) (recovery was $500; attorney fee award of $1,500 was upheld).
It is the province of the jury to determine what is the reasonable value of an attorney’s services, and
the jury may consider all of the facts presented in relation to services rendered as well as any
evidence by attorneys called to testify. Id. In determining whether an award is excessive, the
reviewing court must look at the entire record, including testimony, the amount in controversy, the
nature of the case, common knowledge, and its own common knowledge and experience as lawyers
and judges. Argonaut Ins. Co. v. ABC Steel Prods. Co., Inc., 582 S.W.2d 883, 889 (Tex. Civ.
App.—Texarkana 1979, writ ref’d n.r.e.). Although the attorney’s fees awarded were approximately
six times the actual damages awarded in the judgment


, after reviewing the entire record, we
conclude the attorney’s fees awarded are not excessive. See Flint & Assocs. v. Intercontinental Pipe
& Steel, Inc., 739 S.W.2d 622, 626 (Tex. App.–Dallas 1987, writ denied) (attorney’s fees awarded
nearly seven times actual damages). Appellant’s third issue is overruled.
 
Conclusion 
            The evidence clearly supports the jury’s determination that Padgett’s negated the “as is”
clause upon making oral misrepresentations to Preston that it knew or should have known were false.
The evidence supports the jury verdict. Finally, the protections provided by the Texas Deceptive
Practices Act and sought by Appellant are only available when an unconditional offer of settlement
is made and the damages awarded to the plaintiff are the same or substantially the same. That was
simply not the situation in this case. The judgment of the trial court is affirmed. 
 
                                                                                    Rebecca Simmons, Justice