The STANDARD FIRE INSURANCE COMPANY, Appellant,

v.

Thelma Clark GRIGGS, Appellee.

No. 8898.

Court of Civil Appeals of Texas, Amarillo.

May 22, 1978.

Rehearing Denied June 19, 1978.

Jones, Trout, Flygare & Moody, James L. Wharton, Lubbock, for appellant.

McCleskey, Harriger, Brazill & Graf, Don Graf, Lubbock, for appellee.

REYNOLDS, Justice.

The trial court, ruling that the word "jewelry" as used in an exclusionary clause of an insurance policy was ambiguous when applied to the Indian belts and bolo ties in controversy and should be construed against the insurer, directed a verdict for the insured on the issue of liability and rendered judgment for the values of the items found by the jury. In its context, the word "jewelry" is not ambiguous and the court should have submitted the requested special issues for the jury to factually determine whether each item was jewelry. Reversed and remanded.

The Standard Fire Insurance Company issued its Texas Standard Homeowners Policy to Thelma Clark Griggs. In one of the policy's insuring provisions is this language:

> COVERAGE B—UNSCHEDULED PERSONAL PROPERTY owned, worn or used by the Insured . . .
>
> EXCLUSIONS—Coverage B does not cover:
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> e. Loss in excess of $500 (any one loss) of gems, watches, jewelry or furs. . .

The policy does not contain a definition of jewelry.

While the insurance policy was in force, Mrs. Griggs' home was burglarized. Among the property taken and never recovered were items admitted to be jewelry exceeding the value of $500 and seven Indian belts and four bolo ties.

One of the belts was an old Indiana beaded belt with the beadwork attached to wool yarn. The other six were Navajo belts, made of leather with conchas. One of the six had copper conchas, and the other five had silver conchas which, on two of the belts, were set with turquoise and separated by "butterflies" made of silver.

The bolo ties were of braided leather. One had a large turquoise stone set in a silver notched bezel and silver tips on the leather. Another was a shadow box bolo tie with a single turquoise stone set in an oval bezel and silver cone tips on the leather. One tie had two turquoise stones and one coral stone in an irregular shaped bezel with leaf forms overlapping, and a squash blossom on silver cone tips. The other was an old Zuni mosaic of a ceremonial "Rainbow man" inlaid with turquoise, jet, coral and mother of pearl with carved silver tips.

The Standard Fire Insurance Company paid Mrs. Griggs $500, but refused any payment for the loss of the belts and ties on the contention that they were jewelry for which any coverage in excess of the $500 payment made was excluded by the policy. This lawsuit resulted.

The evidence revealed that Mrs. Griggs has been interested for thirty years in, and is an active collector of, Indian artifacts and crafts. She had acquired the belts and ties during her travels, some of which were taken as a member of the Acquisition Committee of the West Texas Museum in Lubbock, Texas, charged with locating and acquiring Indian artifacts of museum quality. She expressed the opinion that the concha belts and bolo ties were not considered to be jewelry, but were worn as articles of clothing, the concha belts being worn to assist in holding up pants or cinching in blouses. Introduced in evidence were checks showing some of her personal purchases and carrying the notation "Indian Jewelry" to which had been added in some instances, after the paid checks were returned to her, the words "Bolo ties," "and concho belt," "& belt," and "& concho belt."

Paul Summers, who has been interested in Indian items for almost sixty years and has collected and traded Indian artifacts since the early 1920's testified that he considered concha belts as clothing, and that neither he nor Indians nor other traders referred to them as jewelry. He stated that a bolo tie is a man's item for wear, and he saw no reason to designate the bolo ties as Indian jewelry.

Carla Lee Tanner, Professor Emeritus in the Anthropology Department at the University of Arizona and author of published articles and books about Indians and Indian art, related the history, use and nature of various Indian artifacts, including concha belts and bolo ties. She testified that concha belts and bolo ties were worn for adornment; that the belts were never used as support for pants, skirts or blouses, and that bolo ties are not worn to hold the collar in position. She expressed the opinion that the concha belt and all bolo ties are always considered as objects of adornment, pieces of jewelry; yet, she declined to say that all decorated belts and buckles were jewelry, stating that it depended upon how decorated they were.

Upon the adduction of all evidence, the trial court ruled that the word "jewelry" as used in the policy is ambiguous as a matter of law when applied to the facts in this case and should be construed against the insurance company. Refusing the insurance company's requested special issues for a factual determination whether each item is jewelry, the court directed a verdict for Mrs. Griggs on the issue of liability, submitting to the jury only issues inquiring of the value of each item. Receiving the jury's verdict on values, the court rendered judgment decreeing that Mrs. Griggs recover the sum of $4,825 from the insurance company.

The Standard Fire Insurance Company appeals. Consideration is given first to its contentions that the court erred in directing a verdict on the holding that the term "jewelry" is ambiguous and in refusing to submit its requested special issues inquiring whether each item is or is not jewelry.

Because neither party subscribes a technical meaning to the use of the undefined word "jewelry," the meaning to be given it is the ordinary lay meaning to the general public. *De La Cruz v. Combined American Insurance Company*, 527 S.W.2d 820, 821 (Tex.Civ.App.—Amarillo 1975, writ ref'd n.r.e.). The absence of Texas authority on the meaning of the undefined term in the insurance policy warrants resort to the dictionary. *Ramsay v. Maryland American General Insurance Company*, 533 S.W.2d 344, 346 (Tex.1976). Webster's New International Dictionary (2d Ed.) imparts this information: "jewelry, n. Jewels collectively; personal ornaments, as badges, bracelets, brooches, pendants, set or studded with jewels; as, a bride's *jewelry*; fraternity *jewelry*; hence, pieces of precious metals, crystal, etc., shaped and worn for adornment."

The parties do not differ on the definition; indeed, they both refer to the dictionary definition and recite it to some extent. Their difference is in the consequence of its application to the described belts and ties. In essence, the insurance company urges that the definition encompasses the belts and ties in controversy; Mrs. Griggs is just as insistent that the definition does not apply to the items, further submitting that if the word "jewelry" is susceptible of more than one reasonable construction, the construction which favors the insured should apply.

Admittedly, if a word used in an exclusionary or limiting clause of an insurance policy is ambiguous, the courts will apply the construction which favors the insured and permits recovery. *See Ramsay v. Maryland American General Insurance Company, supra*, at 349. But, in this connection, "ambiguous" denotes that the word is susceptible of more than one meaning.

Where, to the contrary, the word has a well-defined and understood meaning, it is not ambiguous. *Cf. Universal C. I. T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 157 (1951), where it is said that a contract is ambiguous only when, after application of the the pertinent rules of construction, it is genuinely uncertain which of two or more meanings is the proper meaning.

Here, there is no uncertainty in the proper meaning of the word "jewelry;" therefore, it is not ambiguous. The uncertainty is created, not from the meaning of the word, but by the application of the meaning to the described belts and ties. Even the experts disagreed whether the items were, or fit the definition of, jewelry. Given the agreed definition and the disagreeing evidence, the disputed fact issues whether each item was jewelry should have been submitted for the jury's determination. *See White v. White*, 141 Tex. 328, 172 S.W.2d 295, 296 (1943).

There remains Mrs. Griggs' argument that if there is leeway for a jury to decide whether or not a particular item is or is not jewelry, an ambiguity exists which, on the authority of *Ramsay v. Maryland American General Insurance Company, supra*, must be construed against the insurance company to permit her recovery. In our view, *Ramsay* is not dispositive of the particular matter. There, the adverse parties offered reasonable and conflicting interpretations of the meaning of the term in question; here, to the contrary, the parties agreed on the meaning of the word "jewelry," but offered reasonable and conflicting evidence bearing on the issue whether the items are or are not jewelry.

In view of the foregoing, the trial court erred in directing a verdict and in refusing to submit the requested special issues. Accordingly, the insurance company's points of error directed to these actions are sustained, but the points concerning the court's refusal to direct a verdict for the insurance company are overruled.

The judgment of the trial court is reversed and the cause is remanded.